**VINCENT v. UNITED STATES.**

No. 599.

Municipal Court of Appeals for the District of Columbia.

April 30, 1948.

---

830

Alfred M. Schwartz, of Washington, D. C., for appellant.

James C. McKay, Asst. U. S. Atty., of Washington, D. C. (George Morris Fay, U. S. Atty., and William S. McKinley and Sidney S. Sachs, Asst. U. S. Attys., all of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant was found guilty and fined on each of three counts of an information which charged violation of Part II of the Interstate Commerce Act,[1] commonly known as the Motor Carrier Act. The substance of the charge was that appellant engaged in the interstate transportation of passengers as a common carrier by motor vehicle for hire without having secured a certificate of public convenience and necessity from the Interstate Commerce Commission, without filing required schedule of his rates and fares, and without filing the required certificate of insurance.[2]

It is not disputed that the appellant did operate in interstate commerce, that he did carry passengers for hire, and that he had not complied with the law governing common carriers. Thus the only remaining fact necessary to a conviction was proof that he operated as a "common carrier by motor vehicle." Section 303(a) (14) of the Act defines this term as follows:

"The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, * * *."

Section 303(b) under the heading "Vehicles excepted from operation of law" provides that:

"Nothing in this chapter * * * shall be construed to include * * * (9) the casual, occasional, or reciprocal transportation of passengers or property by motor

---

[1] Act of August 9, 1935, C. 498, 49 Stat. 543, 49 U.S.C.A. § 301 et seq.

[2] The three counts of the information are based on violations of Title 49 U. S.C.A., Sections 306(a), 317(d), and 322(a); and Interstate Commerce Commission Regulation 49 C.F.R. 174.1 issued pursuant to Section 322(a).

vehicle in interstate or foreign commerce for compensation by any person not engaged in transportation by motor vehicle as a regular occupation or business, * * *."

 Under the definition of a common carrier by motor vehicle, the burden was upon the government to prove beyond a reasonable doubt that appellant held himself out to the general public as a common carrier by motor vehicle in interstate commerce. It is well established that a "holding out" may be accomplished by advertisement or solicitation through agents, but these tests are neither determinative nor exclusive.[3] A "holding out" may result from a course of business or conduct.[4] A definition of the term "holding out" appears in Northeastern Lines, Inc., Common Carrier Application, 11 M.C.C. 179 (1939):

"Question arises as to the meaning of the words 'holds itself out,' as applied to a common carrier. They clearly imply, we believe, that the carrier *in some way* makes known to its prospective patrons the fact that its services are available. This may be done in various ways, as by advertising, solicitation, or the establishment in a community of a known place of business where requests for service will be received. However the result may be accomplished, the essential thing is that there shall be a public offering of the service, or, in other words, *a communication of the fact that service is available to those who may wish to use it*" (p. 182). (Emphasis supplied.)

 The evidence relied on by the government to support the conviction was as follows: Two employees of the Pinkerton National Detective Agency testified they were in the Washington, D. C., Union Station at about 2:30 on the morning of August 26, 1946, and at that time they were approached by an unidentified man. This man said he had a party of two going to Pittsburgh, and he was trying to get about five. One of the agents replied that they were trying to get transportation to that city and the man then told them to wait around and he would let them know. This man then left the Station but returned almost immediately and said that his other two passengers had decided to get a room and stay in Washington for the night. Thereupon this man took the two Pinkerton agents to appellant and said to appellant, "You have two more passengers for Pittsburgh." Appellant replied, "O. K." Appellant informed them the price for transportation from Washington to Pittsburgh would be $12 each. Appellant and the two detectives then proceeded to appellant's car, a Cadillac passenger automobile bearing District of Columbia license plates, which was parked in a space at the side of the Station. On the way to the car appellant told the witnesses that he had four other passengers. Upon arrival it was found that there were four Marines in the car. Appellant asked them to move to the rear seat, the baggage was placed in the luggage carrier, and witnesses sat in the front seat with appellant. The car left Washington at approximately 3:15 a. m., and was driven to Pittsburgh, Pennsylvania, via the states of Virginia, West Virginia and Maryland. At about 8:40 a. m. appellant parked in a space at the rear of the Greyhound Terminal in Pittsburgh and the four Marines and the two witnesses paid for their transportation. One of the witnesses paid $24 for himself and his companion in accordance with previous arrangements. Appellant did not take the stand in his own behalf, and no other evidence was offered.

In deciding whether this evidence supports the finding of guilt by the trial court, we are bound to adopt the facts and all favorable inferences reasonably and naturally to be drawn therefrom in the light most favorable to the government.[5] Test-

---

[3] Stoner v. Underseth, 85 Mont. 11, 277 P. 437; Marshall v. Public Service Commission, 129 Pa.Super. 272, 195 A. 475.

[4] State v. Rosenstein, 217 Iowa 985, 252 N.W. 251; Stoner v. Underseth, supra.

[5] Morton v. United States, 79 U.S.App. D.C. 329, 147 F.2d 28, certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428; United States v. Kushner, 2 Cir., 135 F.2d 668, certiorari denied 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850; United States v. McDermott, 7 Cir., 131 F.

ed by this rule we have decided that the trial court was justified in concluding that appellant held himself out as a common carrier and violated the statute. The government witnesses were solicited by a man unknown to them, but obviously known to appellant. Appellant had his automobile parked at the Union Station in the middle of the night. He had his charge for the trip prepared in advance, and he actually accepted as his passengers six different people in at least two different groups. The fares charged were substantial and represented no mere contribution to operating expenses. There was no statement that appellant was going to Pittsburgh anyway, or that he was operating casually. The transportation was between two stations, one a railroad terminal and the other a bus terminal. These facts, we believe, justified the trial judge in finding that appellant was at the Station to solicit business. There was none of the atmosphere of a casual transaction. The actions of appellant were not, in our opinion, consistent with innocence, one of the usual tests applied to circumstantial evidence.[6] We believe that the trial court was entitled to infer from all of the circumstances that appellant was at the Station not on occasional business but in pursuance of a regular occupation.

Appellant relies most strongly upon the claim that only one trip was proved and that the statute specifically exempts the casual, occasional or reciprocal transportation of passengers for compensation by a person not engaged in such transportation as a regular occupation or business. There are two answers to this contention.. First, where a person claims to fall within an exception to a statute, this is a matter of defense and must be shown by the defendant, and it is not the duty of the government to either allege or prove that the defendant does not come within the exception.[7] Here defendant offered no evidence indicating that his actions on the morning in question were casual or occasional. The second answer to the contention, as we have already indicated, is that we believe that under the government's evidence the trial judge was entitled to decide that appellant's operations did not fall within the exception to the statute.

Appellant urges that conviction on the third count, which concerns failure to file the required certificate of insurance, cannot stand as it is dependent upon an administrative regulation which was not introduced in evidence. This contention is without merit. The government cited the applicable section of the Code of Federal Regulations in the information. As that Code is nothing more than a supplemental edition of the Federal Register,[8] the court was entitled to take judicial notice of the cited regulation.[9] Appellant in his brief also urged several jurisdictional points, but they were not urged on oral argument, and we find no merit in them.

Affirmed.

2d 313, certiorari denied 318 U.S. 765, 63 S.Ct. 664, 87 L.Ed. 1137, rehearing denied 318 U.S. 801, 63 S.Ct. 827, 87 L. Ed. 1164.

6 2 Wharton, Criminal Evidence (11th Ed.1935) § 922; Underhill, Criminal Evidence (4th Ed.1935) § 15; 1 Wigmore, Evidence (3rd Ed.1940) § 26.

7 McKelvey v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301; United States v. Cook, 17 Wall. 168, 21 L.Ed. 538; Williams v. United States, 78 U.S. App.D.C. 147, 138 F.2d 81, 153 A.L.R. 1213; United States v. King & Howe, 2 Cir., 78 F.2d 693; Grand Trunk Ry. Co. v. United States, 7 Cir., 229 F. 116, certiorari denied 241 U.S. 681, 36 S.Ct.

728, 60 L.Ed. 1234; Byrd v. District of Columbia, D.C.Mun.App., 43 A.2d 46; United States v. Mertine, D.C.N.J., 64 F.Supp. 792.

8 Federal Register Act, § 11, 44 U.S. C.A. § 311.

9 Federal Register Act, § 7, 44 U.S.C. A. § 307; Federal Crop Ins. Corporation v. Merrill, 332 U.S. 380, 68 S.Ct. 1; United States ex rel. Brown v. Lederer, 7 Cir., 140 F.2d 136, certiorari denied 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568; Martin v. Burcham, Tex.Civ. App., 203 S.W.2d 807; Jagemann v. Mc-Mahan, 331 Ill.App. 110, 72 N.E.2d 449; cf. Mogul Transp. Co. v. Larison, Or., 181 P.2d 139.